UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE HANOVER INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>        v.<br><br>INTREPID LAW GROUP, LLC, et al.,<br><br>                    Defendants. | CASE NO. C20-0662JLR<br><br>ORDER GRANTING MOTIONS TO STAY AND DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE |

## I.    INTRODUCTION

Before the court are three motions:  (1) Plaintiff The Hanover Insurance Company's ("Hanover") motion for partial summary judgment (MSJ (Dkt. # 32)); (2) Defendants Tracy Takenaka and Brian Rounds's (collectively, "Takenaka/Rounds") motion to stay proceedings (MTS (Dkt. # 36)); and (3) Defendant Donald Woodard's motion to dismiss or stay (MTD (Dkt. # 41)).  Defendants Takenaka/Rounds (TR MSJ Resp. (Dkt. # 45)); Mr. Woodard (Woodard MSJ Resp. (Dkt. # 48)); Thi Huynh and

1   Intrepid Law Group, LLC ("Intrepid") (Intrepid MSJ Resp. (Dkt. # 44)); and Joseph

2   Pham and 4200 Letitia, LLC ("Letitia") (Letitia MSJ Resp. (Dkt. # 49)) oppose

3   Hanover's motion for summary judgment.  Hanover opposes both Takenaka/Rounds's

4   motion to stay and Mr. Woodard's motion to dismiss or stay.  (Hanover Resp. (Dkt. #

5   50).[1])  The court has considered the motions, the parties' submissions in support of and in

6   opposition to the motions, the relevant portions of the record, and the applicable law.

7   Being fully advised,[2] the court GRANTS Takenaka/Rounds's motion to stay, GRANTS

8   IN PART Mr. Woodard's motion to dismiss or stay, and STAYS this case pending the

9   completion of state-law proceedings.  The court DENIES Hanover's motion for partial

10  summary judgment without prejudice.

11                          **II.      BACKGROUND**

12          This matter is an insurance discovery dispute involving a professional liability

13  policy (the "Policy") issued by Hanover to Intrepid, whose sole member and licensed

14  practicing attorney is Mr. Huynh.  (*See* Am. Compl. (Dkt. # 11) ¶¶ 1.3, 3.49;

15  Intrepid/Huynh Ans. (Dkt. # 29) ¶¶ 1.3, 3.49; Hesselgesser Decl. (Dkt. # 33) ¶ 16, Ex.

16  O).)  Intrepid and Mr. Huynh have been named as defendants or third-party defendants in

17  ───────────────

18  [1] The court granted the parties' stipulated motion to set a briefing schedule for the
    parties' motions.  (1/15/21 Order (Dkt. # 40).)  The court granted Hanover leave to file a single

19  brief that encompasses (1) its response to Takenaka/Rounds's motion to stay, (2) its response to
    Mr. Woodard's motion to dismiss or stay, and (3) its reply in support of its motion for partial
    summary judgment.  (*See id.*; *see* Hanover Resp.)

20
    [2] Hanover and Takenaka/Rounds have requested oral argument on Hanover's motion for

21  partial summary judgment and Takenaka/Rounds's motion to stay.  (*See* MSJ at 1; MTS at 1;
    Hanover Resp.; TR MSJ Resp.)  The court, however, finds oral argument would not be helpful to

22  the disposition of the motions, and therefore declines to hold oral argument.  *See* Local Rules
    W.D. Wash. LCR 7(b)(4).

1   four state-court matters that involve similar underlying facts and transactions.  (*See* MSJ

2   at 1; Am. Compl. ¶¶ 3.1-3.49.)  Hanover is defending Intrepid and Mr. Huynh in these

3   actions subject to a full reservation of rights.  (*See* Am. Compl. ¶ 3.50.)  Hanover alleges,

4   however, that the Policy provides no coverage for the underlying actions because Intrepid

5   and Mr. Huynh "have engaged in a pattern of soliciting investments either for personal

6   interest, for clients without the client's consent, or for other business interests in which

7   [Mr.] Huynh has an ownership or managerial interest."  (MSJ at 1-2.)

8        Hanover now moves for partial summary judgment that it has no obligation to

9   defend or indemnify Intrepid and Mr. Huynh for two of the four disputes:  (1) the

10  "Takenaka Action" filed by Takenaka/Rounds in Thurston County Superior Court (*see*

11  Hesselgesser Decl. ¶ 2, Ex. A (Compl., *Takenaka v. Huynh*, No. 20-2-01426-34

12  (Thurston Cty. Super. Apr. 21, 2020)) ("Takenaka Compl.")); and (2) the "Woodard

13  Action", in which Mr. Woodard joined Intrepid and Mr. Huynh as third-party defendants

14  in a case brought against him by Letitia in King County Superior Court (*see* Hesselgesser

15  Decl. ¶ 11, Ex. J (Am. Ans., *4200 Letitia, LLC v. Woodard*, No. 19-2-16275-9 SEA

16  (King Cty. Super. Dec. 18, 2019)), at 4-12 ("Woodard Compl.")).  (MSJ at 3.)

17  Takenaka/Rounds and Mr. Woodard contend that the court should exercise its discretion

18  under the Declaratory Judgment Act, 28 U.S.C. § 2201, to either dismiss this action or

19  stay it pending the completion of the state-law proceedings.  (*See generally* MTS; MTD.)

20  They argue that maintaining Hanover's action in this court will involve needless

21  determination of Washington state-law issues that are more appropriately decided in state

22  court.  (*See generally* MTS; MTD.)

Below, the court recounts the background of the Takenaka Action and the Woodard Action and sets forth the procedural background of Hanover's action in this court.

**A.     Factual Background**

    1.     The Takenaka Action

In September 2017, Matt Kaing, an insurance broker who advised Dr. Takenaka and Dr. Rounds about their professional disability and malpractice insurance, contacted Dr. Takenaka regarding an investment opportunity.  (Takenaka Decl. (Dkt. # 37) ¶ 2; Takenaka Compl. ¶¶ 2.2-2.3.)  Over the years, Mr. Kaing had learned about Dr. Takenaka and Dr. Rounds's financial circumstances, their dental practices' revenues, their personal net worth, and their retirement strategies and goals, and he had earned their trust. (Takenaka Decl. ¶ 2; Takenaka Compl. ¶ 2.2.)  Mr. Kaing eventually offered Dr. Takenaka and Dr. Rounds two investment opportunities, both of which went sour.

        a.     *Takenaka/Rounds's Loan to Letitia*

The first investment presented by Mr. Kaing was an opportunity to make a "hard money loan" of $50,000 to Letitia with repayment within 90 days.  (Takenaka Decl.  ¶ 4; Takenaka Compl. ¶ 2.4.)  Mr. Kaing advised Dr. Takenaka and Dr. Rounds that the loan documents would be prepared by an attorney—Mr. Huynh—whom Mr. Kaing described as a "family friend and business associate."  (Takenaka Decl. ¶ 4.)  Soon thereafter, they received a loan summary document that stated, "Intrepid Law Group, LLC, will prepare [the] Note and Deed of Trust.  They will be responsible for monitoring the refinance process to ensure funds will be paid back on time."  (*Id.* ¶ 5; *see id.*, Ex. 1.)

1    Dr. Takenaka and Dr. Rounds then received from Mr. Huynh and Intrepid a

2    promissory note and deed of trust against real property "commonly known as 4200

3    Letitia Ave. S., Seattle, WA, 98118" in King County, Washington.  (Takenaka Decl. ¶ 6;

4    *see id.*, Exs. 2-3; Takenaka Compl. ¶ 2.5, Exs. 1-2.)  Letitia was designated as the Grantor

5    and Intrepid as the Trustee on the Deed of Trust.  (Takenaka Decl. ¶ 6.; *see id.*, Ex. 3.;

6    Takenaka Compl. ¶ 2.5.)  Dr. Takenaka and Dr. Rounds understood that Mr. Huynh and

7    Intrepid would protect their interests in the loan transaction.  (Takenaka Decl. ¶ 6.)

8    Nevertheless, Mr. Huynh never informed Dr. Takenaka or Dr. Rounds that he was not

9    representing their interests; that there was any conflict of interest; or that they should seek

10   independent counsel with respect to the loan transaction.  (*Id.* ¶ 7.)

11   Dr. Takenaka and Dr. Rounds gave Mr. Huynh a check for $50,000, made out to

12   "Intrepid Law Group," on September 25, 2017.  (*Id.*.)  The terms of the promissory note

13   required repayment of the $50,000, with interest, by no later than December 29, 2017.

14   (*Id.* ¶ 8, *see id.* Ex. 2; Takenaka Compl. ¶ 2.5.)  At Mr. Huynh's request, Dr. Takenaka

15   and Dr. Rounds agreed to extend the date of maturity to March 29, 2018.  (Takenaka

16   Decl. ¶ 8; Takenaka Compl. ¶ 2.10.)  When they did not receive payment, they asked Mr.

17   Huynh about the status of the payment, but received no substantive response.  (Takenaka

18   Decl. ¶ 8.)

19   Dr. Takenaka and Dr. Rounds eventually learned that Mr. Huynh, as

20   representative of Intrepid, had executed a "Full Reconveyance of Deed" which released

21   the real property as security for the promissory note.  (*Id.* ¶ 9; *see id.*, Ex. 5; Takenaka

22   Compl. ¶ 2.11.)  The execution of the reconveyance was made without Dr. Takenaka's

1  and Dr. Rounds's knowledge, consent, or authorization, and they received no payment on

2  the sums owed under the promissory note.  (Takenaka Decl. ¶ 9; Takenaka Compl. ¶

3  2.11.)  To date, Dr. Takenaka and Dr. Rounds have received no payment on their loan,

4  and they have since learned that the property that served as collateral for the loan has

5  been sold.  (Takenaka Decl. ¶ 9.)

6                                      b.        *Takenaka/Rounds's Investment in Green Sky*

7          After Dr. Takenaka and Dr. Rounds agreed to make the $50,000 loan, Mr. Kaing

8  arranged a meeting between himself, Dr. Takenaka, Dr. Rounds, and Mr. Huynh to

9  discuss an opportunity to purchase an ownership interest in Green Sky Productions, LLC

10 ("Green Sky"), which was formed to operate a licensed marijuana grow facility.  (*Id.*

11 ¶ 10; Takenaka Compl. ¶ 2.4.)  On September 29, 2017, Mr. Kaing emailed to Dr.

12 Takenaka and Dr. Rounds copies of an LLC Operating Agreement, an Assignment of

13 Membership Interests form, and a document entitled "EXECUTIVE SUMMARY –

14 DISTRICT 6 CANNABIS INDUSTRIAL PARK."  (Takenaka Decl ¶ 10; *see id.*, Ex. 6;

15 Takenaka Compl. ¶¶ 2.5-2.6, Exs. 3-5.)  The Executive Summary lists Mr. Huynh as

16 CEO and Chief Legal Officer of Mondragon Cannabis Corp.  (Takenaka Compl. Ex. 3.)

17 The LLC Operating Agreement and Assignment of Membership Interests name Mr.

18 Huynh as Manager of Green Sky.  (*Id.* Exs. 4, 5.)  Dr. Takenaka and Dr. Rounds state

19 that they understood that Mr. Huynh and Intrepid would monitor and protect their best

20 interests as their attorney, based on Intrepid's role in their $50,000 loan and the fact that

21 Mr. Huynh had prepared the LLC documents.  (Takenaka Decl. ¶ 11.)  Mr. Huynh never

22 advised them that he was not their attorney or that he was not representing their interests.

(*Id.*)  He also never advised them to seek independent counsel with respect to the Green Sky transaction; never informed them of potential conflicts of interest; and never advised them of potential risks in making the investment.  (*Id.* ¶ 12.)  At Mr. Huynh's direction, Dr. Takenaka and Dr. Rounds wired a $445,000 to Intrepid's IOLTA trust account.  (*Id.*; Takenaka Compl. ¶ 2.8.)  Dr. Takenaka and Dr. Rounds have since received nothing in return for their investment, nor have they ever received an accounting of sums disbursed from the IOLTA account or any explanation regarding the failure of their investment.  (Takenaka Decl. ¶ 12*;* Takenaka Compl. ¶ 2.12.)

      *c.* *Takenaka/Rounds' Thurston County Action*

  On April 21, 2020, Dr. Takenaka and Dr. Rounds filed a complaint in Thurston County Superior Court against Mr. Hyunh; Intrepid; Green Sky; Letitia; Mr. Kaing; and NW Alliance Insurance.[3]  (*See generally* Takenaka Compl.)  Relevant to the instant motions, Dr. Takenaka and Dr. Rounds allege claims against Mr. Huynh, Intrepid, and Green Sky for violations of RCW 21.20.010 (relating to fraud in the solicitation of the sale of securities); breach of contract for failure to pay the returns promised in the Executive Summary; breach of fiduciary duty for executing the reconveyance without their knowledge or consent; violation of RCW 61.24.110 for executing the reconveyance without satisfaction of obligation or request; negligence for Mr. Huynh's failure to comport to the standard of care for attorneys in Washington State; misrepresentation; negligent misrepresentation; conversion; failure to provide an accounting; and violation

---

[3] NW Alliance Insurance is Mr. Kaing's insurance brokerage.  (*See* Takenaka Compl. ¶ 1.7.)  The Takenaka Action does not include claims for insurance coverage.  (*See generally id.*)

of the Washington Consumer Protection Act, ch. 19.86 RCW. (*Id.* ¶¶ 3.3-3.19, 3.27.)

Hanover is not a party to the Takenaka Action. (*See generally id*.)

2.   The Woodard Action

In or about July 2017, Mr. Woodard's neighbor and real estate agent, Thu Tran,

approached him about a real estate investment opportunity. (Woodard Decl. (Dkt. # 42)

¶ 3; Woodard Compl. ¶ 2.) Ms. Tran told Mr. Woodard that the investment was "safe"

because it was handled by an attorney, Mr. Huynh, who would prepare all of the

paperwork. (Woodard Decl. ¶ 3.) Mr. Woodard met with Mr. Huynh, who stated that

financing was needed for a real estate development project and showed Mr. Woodard

sketches of the proposed development. (Woodard Compl. ¶ 7.) Mr. Woodard

understood that Mr. Huynh represented Mr. Pham and his development group. (Woodard

Decl. ¶ 3.) He also understood from Mr. Huynh that his investment was safe because it

was secured by real estate. (*Id.*; *see also* Woodard Compl. ¶ 8.) Mr. Woodard invested

$200,000 in the project described by Mr. Hyunh; Mr. Huynh received that money as

escrow agent. (Woodard Compl. ¶¶ 10-11.) In exchange, Mr. Huynh gave Mr. Woodard

signed and executed two promissory notes and a deed of trust. (*Id.* ¶ 12; *see id.*, Exs.

1-3.) The larger of the two promissory notes was secured by real property "commonly

known as 4200 Letitia Ave. S., Seattle, WA, 98118." (*Id.* ¶ 12.b; *see id.* Ex. 2.)

Mr. Woodard thought that Mr. Huynh would protect him in the transaction with

Mr. Pham because Mr. Huynh had explained that he and his law firm would safeguard

Mr. Woodard's money. (Woodard Decl. ¶ 5.) Mr. Huynh promised Mr. Woodard that he

would "definitely" get his money back with interest. (*Id.*) Mr. Huynh, however, never

1    advised Mr. Woodard to consult another attorney about the transaction, nor did he inform

2    Mr. Woodard of any conflicts of interest he might have had in the transaction.  (*Id.* ¶ 6.)

3          Mr. Woodard later hired Mr. Huynh as his lawyer to advise him on his estate

4    planning.  (*Id.* ¶ 4.)  Mr. Huyhn assisted Mr. Woodard with preparing and executing a

5    will and a trust document.  (*Id.*)

6          Mr. Pham never paid Mr. Woodard back for either of the two promissory notes.

7    (Woodard Decl. ¶ 8; Woodard Compl. ¶ 10.)  Instead, on June 19, 2019, Letitia filed a

8    complaint to quiet title and for declaratory relief against Mr. Woodard in King County

9    Superior Court.  (Woodard Decl. ¶ 8; Hesselgesser Decl. ¶ 10, Ex. I (Compl., *4200*

10   *Letitia, LLC v. Woodard*, No. 19-2-16275-9 SEA (King Cty. Super. Jun. 19, 2019))

11   ("Letitia Compl.").)  On December 18, 2019, Mr. Woodard filed an amended answer,

12   affirmative defenses, counterclaims, and third-party complaint.  (*See generally* Woodard

13   Compl.)  In relevant part, Mr. Woodard named Mr. Huynh, Intrepid, and Mr. Pham as

14   third-party defendants.  (*See id.* ¶¶ 1-3.)  He alleged claims against Mr. Huynh and

15   Intrepid for breach of duty of care as an escrow agent, fraudulent inducement, negligent

16   misrepresentation, and conversion.[4]  (*See id.* ¶¶ 25-46.)  Hanover is not a party to the

17   Woodward Action.  (*See generally id.*)

18   **B.   Procedural Background**

19         Hanover filed its complaint in this court on April 30, 2020, seeking a declaration

20   that it is under no duty to defend or indemnify Intrepid and Mr. Huynh in connection with

21
_____

22         [4] Mr. Woodard amended his answer and third-party complaint in January 2021 to add
     additional third-party defendants.  (Woodard Decl. ¶ 14, Ex. 4.)

1 four underlying state-court actions, including the Takenaka and Woodard Actions.

2 (Compl. (Dkt. # 1).)  It amended its complaint on July 8, 2020, to add allegations

3 establishing this court's diversity jurisdiction over the matter.  (Am. Compl.; *see also*

4 OSC Resp. (Dkt. # 12).)  Hanover does not allege a claim for damages.  (*See generally*

5 Am. Compl.)  All Defendants answered the amended complaint; none filed

6 counterclaims.  (*See* TR Ans. (Dkt. # 17); Woodard Ans. (Dkt. # 19); Pham/Letitia Ans.

7 (Dkt. # 22); Intrepid/Hyunh Ans.)

8      On November 29, 2020, Hanover filed its motion for partial summary judgment.

9 (*See* MSJ.)  Hanover then re-noted its motion twice.  (*See* 11/11/20 Notice (Dkt. # 34);

10 11/24/20 Notice (Dkt. # 35).)  On January 7, 2021, Takenaka/Rounds filed their motion

11 to stay.  (*See* MTS.)  On January 15, 2021, the parties stipulated to a revised briefing

12 schedule that would take into account Mr. Woodard's intent to file a motion to dismiss or

13 stay and would allow Hanover to file a consolidated response to Takenaka/Rounds's and

14 Mr. Woodard's motions.  (Stip. Mot. (Dkt. # 39); *see* 1/15/21 Order.)  Mr. Woodard filed

15 his motion to dismiss or stay on January 21, 2021.  (*See* MTD.)

16                          **III.   ANALYSIS**

17      Takenaka/Rounds move the court to stay this case pending the resolution of the

18 Takenaka Action.  (*See* MTS at 1.)  Mr. Woodard asks the court to dismiss this action

19 without prejudice or, in the alternative, to stay this case pending the resolution of the

20 Woodard Action.  (*See* MTD at 5-12.)  Both motions urge the court to exercise its

21 discretion to dismiss or stay this declaratory judgment action under *Brillhart v. Excess*

22 *Insurance Co. of America*, 316 U.S. 491 (1942).  (*See generally* MTS; MTD.)

Under the *Brillhart* abstention doctrine, district courts have broad discretion to stay or dismiss actions seeking declaratory judgment. *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-83 (1995); *Brillhart*, 316 U.S. at 494-95; *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (en banc)); *see also* 28 U.S.C. § 2201 (federal courts "*may* declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)). The *Brillhart* doctrine rests on concerns about judicial economy and cooperative federalism. *Brillhart*, 316 U.S. at 495. In light of these concerns, district courts consider three primary factors when evaluating whether to abstain from hearing a case under the *Brillhart* doctrine: "[1] avoiding 'needless determination of state law issues'; [2] discouraging 'forum shopping'; and [3] avoiding 'duplicative litigation.'" *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (quoting *Dizol*, 133 F.3d at 1224). Even if the district court has subject matter jurisdiction over a declaratory judgment action, it is not required to exercise its authority to hear the case. *See Dizol*, 133 F.3d at 1223. The court considers each of the *Brillhart* factors in turn.

## A.    Needless Determination of State Law Issues

First, courts decline jurisdiction under the Declaratory Judgment Act in order to avoid needlessly determining state law issues. *R.R. St. & Co.*, 656 F.3d at 975. When the sole basis for federal jurisdiction is diversity of citizenship, "the federal interest is at its nadir and the *Brillhart* policy of avoiding unnecessary declarations of state law is especially strong." *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir.

1  1991) *overruled in part on other grounds by Dizol*, 133 F.3d at 1227.[5]  Thus, "[i]f there

2  are parallel state proceedings involving the same issues and parties pending at the time

3  the federal declaratory action is filed, there is a presumption that the entire suit should be

4  heard in state court."  *Dizol*, 133 F.3d at 1225 (citing *Chamberlain v. Allstate Ins.*

5  *Co.,* 931 F.2d 1361, 1366-67 (9th Cir. 1991)).

6        Here, the sole basis for federal jurisdiction is diversity, and there is no dispute that

7  Washington state law provides the rule of decision in this insurance coverage case.  (*See*

8  MTS at 7-9; MTD at 8-10; Hanover Resp. at 10.)  The parties, however, dispute whether

9  the Takenaka and Woodard Actions are parallel state proceedings that raise the same

10  legal issues that are before the court in this case.

11        The Ninth Circuit interprets "parallel actions" liberally.  Underlying state actions

12  need not involve the same parties nor the same issues to be considered parallel for

13  purposes of the *Brillhart* analysis.  *See, e.g.*, *Emp'rs Reinsurance Corp. v. Karussos*, 65

14  F.3d 796, 800 (9th Cir. 1995) (finding that state and federal actions were parallel when

15  the actions raised overlapping, but not identical, factual issues and the insurer was not a

16  party in the underlying state court action), *overruled in part on other grounds*

17  *by Dizol,* 133 F.3d at 1227.  Rather, "[i]t is enough that the state proceedings arise from

18  the same factual circumstances."  *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750,

19  755 (9th Cir. 1996), *overruled in part on other grounds by Dizol*, 133 F.3d at 1227.

20

21       [5] The *Dizol* court overruled multiple cases only to the extent they held "that a district court need not decide sua sponte whether jurisdiction under § 2201(a) should be declined, and

22  that the appellate court need not decide sua sponte whether the district court abused its discretion in exercising discretionary jurisdiction."  *Huth*, 298 F.3d at 803 (citing *Dizol*, 133 F.3d at 1227.)

1        Here, both the state-law proceedings and this case arise from the same factual

2   circumstances:  the actions of Intrepid and Mr. Huynh with respect to the investments at

3   issue in the Takenaka and Woodard Actions.  Hanover contends that because its

4   declaratory judgment action asks the court only to evaluate the complaints in the state-

5   court actions to determine whether it has a duty to defend Intrepid and Mr. Huynh, there

6   are no overlapping factual or legal issues that would tip the scales in this case toward

7   abstention.  (Hanover Resp. at 4-7.)  Having reviewed the pleadings in the Takenaka and

8   Woodard actions, however, the court concludes that there remain issues of fact regarding

9   Intrepid's and Mr. Huynh's roles with respect to ownership or management of Letitia and

10  Green Sky and Mr. Huynh's involvement in the alleged solicitations that are implicated

11  in Hanover's motion for summary judgment.  (*See, e.g.*, MSJ at 18-21 (discussing

12  exclusions based on Mr. Huynh's role with respect to these entities).)  These issues are

13  best left to resolution in the state court proceedings.  This court will be better equipped to

14  evaluate Hanover's motion for summary judgment after the state courts have made

15  factual findings in the cases before them.  The court finds, therefore, that this factor

16  favors abstention.[6]

17  **B.    Forum Shopping**

18      Courts decline jurisdiction over actions for declaratory relief to discourage forum

19  shopping.  *R.R. St. & Co.*, 656 F.3d at 975.  The Ninth Circuit has instructed that federal

20

21      [6] Takenaka/Rounds argue that Hanover's duty to allocate under the Policy requires the
court to stay this action.  (*See* MTS at 9-12.)  Because Hanover has not requested allocation in
this action (*see generally* Am. Compl.; *see* Hanover Resp. at 7), the court concludes that the

22  Policy's allocation provision is not implicated in the *Brillhart* analysis.

ORDER - 13

1    courts should generally decline to entertain reactive declaratory actions filed solely to

2    gain a tactical advantage.  *Id.* at 976 (quoting *Cont'l Cas. Co.*, 947 F.2d at 1371-72).

3        Here, Hanover's action is not "reactive" because there is no underlying insurance

4    dispute pending in state court.  Indeed, Mr. Woodard concedes that Hanover has not

5    engaged in forum shopping because diversity jurisdiction provides Hanover a basis to

6    bring this suit in federal court (MTD at 10), and Takenaka/Rounds do not address forum

7    shopping in their briefing (*see generally* MTS; MTS Reply (Dkt. # 51)).  The court

8    concludes that this factor is neutral in the *Brillhart* analysis.

9    **C.    Duplicative Litigation**

10       Third, courts decline jurisdiction over actions for declaratory relief in order to

11   avoid duplicative litigation.  *R.R. St. & Co.*, 656 F.3d at 975.  This factor is grounded in

12   concerns for judicial economy and operates to prevent "independent" and "unnecessary"

13   duplications of effort by state and federal courts.  *Snodgrass v. Provident Life and Acc.*

14   *Ins. Co.*, 147 F.3d 1163, 1167-68 (9th Cir. 1998).  The court agrees with Hanover to the

15   extent that it argues that this action seeks a determination of coverage, rather than a

16   decision regarding Intrepid's and Mr. Huynh's liability to Dr. Takenaka, Dr. Rounds, and

17   Mr. Woodard.  As the court discussed above, however, the court's decision regarding

18   coverage depends on facts regarding Intrepid's and Mr. Huynh's ownership and

19   involvement in the subject entities—facts that are best left to the state courts for

20   determination.  The court concludes that this factor favors *Brillhart* abstention.

21

22

**D.     Stay vs. Dismissal**

In sum, the court finds that the first and third *Brillhart* factors favor abstention. Thus, the final issue left for the court is whether to dismiss this action or stay it pending the completion of the state court proceedings.  *See Huth*, 298 F.3d at 802 (court has discretion to stay or dismiss).  The court concludes that a stay is appropriate.  The court agrees with Hanover that it is in the interest of judicial economy to consolidate the issues of coverage under the Policy in a single federal proceeding rather than dismiss this action (or portions of it) outright and force Hanover to re-file its claims in state court.  (*See* Hanover Resp. at 12.)  Accordingly, the court GRANTS Takenaka/Rounds' motion to stay and GRANTS IN PART Mr. Woodard's motion to dismiss or stay.

<h3 style="text-align:center">IV.     CONCLUSION</h3>

For the foregoing reasons, the court orders as follows:

1.      The court GRANTS Takenaka/Rounds's motion to stay (Dkt. # 36) and GRANTS IN PART Mr. Woodard's motion to dismiss or stay (Dkt. # 41).  This case is STAYED pending the completion of state-court proceedings in the Takenaka Action and the Woodard Action;

2.      The court DENIES Hanover's motion for summary judgment (Dkt. # 32) without prejudice to re-filing it when the court lifts the stay in this matter;

3.      The parties are ORDERED to file joint status reports within ten days of (1) the resolution of the Takenaka Action and (2) the resolution of the Woodard Action; and

//

//

1        4.      The Clerk is DIRECTED to administratively close this matter pending

2   further order of the court.

3        Dated this 18th day of March, 2021.

4

5                                                    _____

6                                                    JAMES L. ROBART
                                                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 16