UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE HANOVER INSURANCE COMPANY,<br><br>               Plaintiff,<br><br>    v.<br><br>INTREPID LAW GROUP, LLC, et al.,<br><br>               Defendants. | CASE NO. C20-0662JLR<br><br>ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION |

## I.    INTRODUCTION

Before the court is Plaintiff The Hanover Insurance Company's ("Hanover")

motion for reconsideration of the court's March 18, 2021 order denying Hanover's

motion for summary judgment and staying this case.  (MFR (Dkt. # 54); *see also* Reply

(Dkt. # 60); 3/18/21 Order (Dkt. # 53); MSJ (Dkt. # 32).)  Pursuant to the court's order

directing Defendants to respond to Hanover's motion for reconsideration and Local Civil

Rule 7(h)(3), Defendants Tracy Takenaka and Brian Rounds (collectively,

1  "Takenaka/Rounds"); Donald Woodard; and Joseph Pham and 4200 Letitia, LLC

2  ("Letitia") responded to Hanover's motion.  (*See* Takenaka/Rounds Resp. (Dkt. # 56);

3  Woodard Resp. (Dkt. # 58); Pham Resp. (Dkt. # 59); 4/1/21 Order (Dkt. # 55)); *see also*

4  Local Rules W.D. Wash. LCR 7(h)(3).  Defendants Intrepid Law Group, LLC

5  ("Intrepid") and Thi Huynh did not respond to Hanover's motion for reconsideration.

6  (*See generally* Dkt.)  The court has considered the motion, all submissions filed in

7  support of and in opposition to the motion, the relevant portions of the record, and the

8  applicable law.  Being fully advised,[1] the court GRANTS IN PART Hanover's motion

9  for reconsideration.

## II.    BACKGROUND

11     The court detailed the factual and procedural background of this case in its March

12  18, 2021 order.  (*See* 3/18/21 Order at 2-10.)  Thus, the court recounts here only the facts

13  relevant to the present motion.

### A.    The Woodard and Takenaka Actions

15     This matter is an insurance discovery dispute involving a professional liability

16  policy (the "Policy") issued by Hanover to Intrepid, whose sole member and licensed

17  practicing attorney is Mr. Huynh.  (*See* Am. Compl. (Dkt. # 11) ¶¶ 1.3, 3.49;

18  Intrepid/Huynh Ans. (Dkt. # 29) ¶¶ 1.3, 3.49.)  At issue in Hanover's motion for partial

19  summary judgment and its motion for reconsideration are two of four underlying

---

[1] No party requests oral argument (*see* MFR; Takenaka/Rounds Resp.; Woodard Resp.; Pham Resp.) and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

state-court lawsuits in which Hanover is defending Intrepid and Mr. Huynh subject to a reservation of rights: (1) the "Takenaka Action" filed by Takenaka/Rounds in Thurston County Superior Court (*see* Hesselgesser Decl. (Dkt. # 33) ¶ 2, Ex. A (Compl., *Takenaka v. Huynh*, No. 20-2-01426-34 (Thurston Cty. Super. Apr. 21, 2020)) ("Takenaka Compl.")); and (2) the "Woodard Action," in which Mr. Woodard joined Intrepid and Mr. Huynh as third-party defendants in an action to quiet title brought against him by Letitia in King County Superior Court (*see id.* ¶ 11, Ex. J (Am. Ans., *4200 Letitia, LLC v. Woodard*, No. 19-2-16275-9 SEA (King Cty. Super. Dec. 18, 2019)), at 4-12 ("Woodard Compl.")).

The Takenaka Action involves two failed investments that Takenaka/Rounds made in September and October 2017. First, Takenaka/Rounds agreed to make a $50,000 "hard money loan" to Letitia. (*See* 3/18/21 Order at 4-8 (setting forth the background of the Takenaka Action); *see also* Takenaka Compl. ¶¶ 2.4-2.5.) This loan was evidenced by a promissory note against real property "commonly known as 4200 Letitia Ave. S., Seattle, WA, 98118" in King County, Washington ("the Property"). (*See* Takenaka Compl. ¶ 2.5, Exs. 1-2.) The deed of trust listed Letitia as Grantor and Intrepid as Trustee. (*See* Takenaka Compl. Exs. 2-3; *see also* Takenaka Decl. (Dkt. # 37) ¶ 6, Exs. 2-3.) Second, Takenaka/Rounds agreed to invest $445,000 to purchase an ownership interest in Green Sky Productions, LLC ("Green Sky"), a licensed marijuana grow business. (*See* Takenaka Compl. ¶¶ 2.4, 2.8.) Mr. Huynh was the managing member and majority owner of Green Sky. (*See* Takenaka Compl. ¶ 1.4; *see also id.* Ex. 5.) Takenaka/Rounds assert that they never received repayment of their loan to Letitia or

returns from their investment in Green Sky. (*See id.* ¶¶ 2.10, 2.15.) They further assert that Mr. Huynh executed, without their knowledge, consent, or authorization, a "Full Reconveyance of Deed" which released the Property as security for the promissory note. (*See* Takenaka Compl. ¶ 2.11.) Takenaka/Rounds allege claims against Mr. Huynh, Intrepid, and Green Sky arising from their Letitia and Green Sky transactions for violations of RCW 21.20.010 (relating to fraud in the solicitation of the sale of securities); breach of contract for failure to pay the returns promised in the Executive Summary; breach of fiduciary duty for reconveying the Property without their knowledge or consent; violation of RCW 61.24.110 for executing the reconveyance without satisfaction of obligation or request; negligence for Mr. Huynh's failure to comport to the standard of care for attorneys in Washington State; misrepresentation; negligent misrepresentation; conversion; failure to provide an accounting; and violation of the Washington Consumer Protection Act, ch. 19.86 RCW. (Takenaka Compl. ¶¶ 3.3-3.19, 3.27.)

The Woodard Action involves a total of $200,000 in loans that Mr. Woodard made in August and September 2017. (*See* 3/18/21 Order at 8-9 (setting forth the background of the Woodard Action); *see also* Woodard Compl. ¶¶ 6-12.[2]) The first of these loans, for $150,000, was evidenced by a promissory note listing Mr. Pham as Guarantor and Kylin NW Properties, LLC ("Kylin NW") as Maker. (*See* Woodard Compl. ¶ 12(a), Ex. 1.) It was secured by a deed of trust against the Property that named Mr. Pham as

---

[2] Mr. Woodard repeats paragraph numbers 10 through 12. (*See* Woodard Compl. at 6-7.) Here, the court cites to the first instance of paragraphs 10 through 12.

Grantor and Intrepid as Trustee.  (*See id.* ¶ 12(b), Ex. 2.)  The second loan, for $50,000, was evidenced by a promissory note listing Mr. Pham, as a member of Letitia, as Maker.[3] (*See id.* ¶ 12(c), Ex. 3.)  Mr. Woodard never received repayment of these loans.  (*See* Woodard Compl. ¶ 10.[4])  He alleges claims against Intrepid and Mr. Huynh for breach of the duty of care as an escrow agent, fraudulent inducement, negligent misrepresentation, and conversion.  (*See id.* ¶¶ 25-46.)

**B.     The Court's March 18, 2021 Order**

In its March 18, 2021 order, the court granted Takenaka/Rounds' and Mr. Woodard's motions to stay this case pending the resolution of their underlying state court actions.  (*See* 3/18/21 Order at 15-16; *see also* Takenaka/Rounds MTS (Dkt. # 36); Woodard MTS (Dkt. # 41).)  The court determined that a stay was appropriate under the *Brillhart* abstention doctrine.  (*See id.* at 10-15 (citing *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942)).  Under this doctrine, district courts consider three primary factors when evaluating whether to abstain from hearing a declaratory judgment action: "[1] avoiding 'needless determination of state law issues'; [2] discouraging 'forum shopping'; and [3] avoiding 'duplicative litigation.'"  *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (quoting *Gov't Employees Ins. Co. v.*

---

[3] In its complaint in the Woodard Action, Letitia alleges that Mr. Pham was unaware of these transactions and that Mr. Huynh forged Mr. Pham's signature on the promissory notes and deed of trust.  (*See* Woodard Decl. (Dkt. # 42) ¶ 9, Ex. 1 ("Letitia Compl.").)  Mr. Pham states the same in his declaration in opposition to Hanover's motion for partial summary judgment. (*See* Pham Decl. (Dkt. # 49) ¶ 15.)

[4] Here, the court cites to the second instance of paragraph 10 in Mr. Woodard's complaint.  (*See* Woodard Compl. at 7.)

*Dizol*, 133 F.3d 1220, 12243 (9th Cir. 1998) (en banc)).  The court determined, under the first *Brillhart* factor, "that there remain[ed] issues of fact regarding Intrepid's and Mr. Huynh's roles with respect to ownership or management of Letitia and Green Sky and Mr. Huynh's involvement in the alleged solicitations that are implicated in Hanover's motion for summary judgment." (3/18/21 Order at 13.)  The court concluded that these issues were "best left to resolution in the state court proceedings" and that, therefore, the first *Brillhart* factor favored abstention.  (*Id.*)  The court did not discuss Kylin NW in its order.  (*See generally id.*)  Second, the court determined that the second *Brillhart* factor, avoiding forum shopping, was neutral.  (*Id.* at 13-14.)  Finally, with respect to the third *Brillhart* factor, which requires the court to consider whether proceeding with the case in federal court would result in duplicative litigation, the court reiterated that its "decision regarding coverage depends on facts regarding Intrepid's and Mr. Huynh's ownership and involvement in the subject entities—facts that are best left to the state courts for determination." (*Id.* at 14.)  Thus, the court found that the third *Brillhart* factor also favored abstention.  (*Id.*)  The court concluded that the *Brillhart* factors weighed in favor of abstention and that it was appropriate to stay this case pending the completion of the state-court proceedings in the Takenaka and Woodard Actions.  (*Id.* at 15.)  Because the court determined that a stay was appropriate, it did not address the merits of Hanover's motion for partial summary judgment and denied that motion without prejudice.  (*See generally id.*)

Hanover now moves the court to reconsider its March 18, 2021 order.  (*See generally* MFR.)  It argues that the court erred when it found that there were questions of

fact regarding Intrepid's and Mr. Huynh's "ownership and involvement" in Green Sky, Letitia, and Kylin NW (collectively, the "subject entities") that should be left for determination by the state courts. (*See id.*; *see also* Reply at 1-2.) Hanover contends that Intrepid's and Mr. Huynh's ownership and involvement in the subject entities is established by documents attached to the Takenaka and Woodard complaints, by public filings with the Washington Secretary of State, and by the parties' admissions. (*See* MFR at 3-6.) Hanover asserts that the court should grant its motion for partial summary judgment because the Policy's Outside Entities exclusion bars coverage for the Takenaka and Woodard Actions and that the court erred when it stayed this matter pending the resolution of those actions. (*See id.*; *see generally* Reply.)

### III.    ANALYSIS

Motions for reconsideration are disfavored. Local Rules W.D. Wash. LCR 7(h)(1). The court ordinarily will deny such motions unless the moving party demonstrates (1) manifest error in the prior ruling, or (2) new facts or legal authority that could not have been brought to the attention of the court earlier with due diligence. *Id.* The court is persuaded that it erred when it found that there were issues of fact regarding Intrepid's and Mr. Huynh's ownership and involvement in the entities at issue in the Takenaka and Woodard Actions. (*See* 3/18/21 Order at 13-14.) On reconsideration, the court concludes that there are no issues of material fact regarding the ownership and management of Green Sky and Letitia; determines that issues of fact remain regarding the ownership and management of Kylin NW; grants Hanover's motion for partial summary

judgment in part; denies Takenaka/Rounds's motion to stay; and grants Mr. Woodard's motion to stay.

## A. Motion for Partial Summary Judgment

### 1. Summary Judgment Standard

Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine issue of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of a dispute of material fact in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party will bear the burden of persuasion at trial, it must establish a prima facie showing in support of its position on that issue. *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if

uncontroverted at trial, would entitle it to prevail on that issue.  *Id*. at 1473.  If the moving

party meets its burden of production, the burden then shifts to the nonmoving party to

identify specific facts from which a fact finder could reasonably find in the nonmoving

party's favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

The court is "required to view the facts and draw reasonable inferences in the light

most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The court may not weigh evidence or make credibility determinations in analyzing a

motion for summary judgment because these are "jury functions, not those of a judge."

*Anderson*, 477 U.S. at 249-50.  Nevertheless, the nonmoving party "must do more than

simply show that there is some metaphysical doubt as to the material facts . . . . Where

the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial."  *Scott*, 550 U.S. at 380 (internal

quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586-87 (1986)).

2.      Hanover's Duty to Defend and Indemnify

An insurer's duty to defend is different from and broader than the duty to

indemnify.  *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 696 (Wash. 2010).

"The duty to indemnify exists only if the policy *actually covers* the insured's liability."

*Id.* (emphasis in original).  The duty to defend, however, is "triggered if the insurance

policy *conceivably covers* allegations in the complaint."  *Id.* (emphasis in original).

"'The duty to defend arises when a complaint against the insured, construed liberally,

alleges facts which could, if proven, impose liability upon the insured within the policy's

coverage.'" *Id.* (quoting *Truck Ins. Exchange v. Vanport Homes, Inc.*, 58 P.3d 276, 282 (Wash. 2002)). An insurer must defend its insured until it is clear that a claim is not covered under the policy. *Id.* Exclusionary clauses in an insurance contract "'are to be most strictly construed against the insurer.'" *Id.* (quoting *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 659 P.2d 509, 511 (Wash. 1983)).

Hanover contends that Intrepid's and Mr. Huynh's ownership and management of the subject entities can be established as a matter of law based on uncontested filings with the Washington Secretary of State, documents Takenaka/Rounds and Mr. Woodard attached to their complaints, and the parties' admissions. (MFR at 3-6.) As a result, according to Hanover, it is entitled to summary judgment that it has no duty to defend or indemnify Intrepid and Mr. Huynh in the Takenaka and Woodard Actions based on the Policy's Outside Entities exclusion. (*Id.*) This exclusion provides as follows:

This insurance does not apply to **Loss** for any **Claim**:

* * *

    K.    <u>Outside Entities</u>

    Based upon, arising out of or in any way related to any entity which is not an **Insured Entity** and:

    1.    Is a publicly traded company in which an **Insured** holds an interest of more than five percent (5%);

    2.    Is a privately owned entity in which an **Insured** holds an interest of fifteen percent (15%) as a partner, member, principal or stockholder or creditor;

    3.    Employs an **Insured Individual**;

      4.     Is directly or indirectly operated, controlled or managed by an **Insured**.

(Hesselgesser Decl. ¶ 16, Ex. O ("Policy") at HANOVER000011-13.)  The Policy includes the following definitions:

>**Insured** means an **Insured Entity** and any **Insured Individual**.

>**Insured Entity** means the **Named Insured** and any **Predecessor Firm**. **Insured Entity** does not include any title agency, title insurance company or any other entity on whose behalf an **Insured Individual** acts as a title agent or designated issuing attorney.

>**Insured Individual** means any past, present or future owner, partner, shareholder, employee, **Independent Contractor**, or Of Counsel attorney (including part-time, seasonal, leased or temporary employees), intern or volunteer of an **Insured Entity** while acting solely within his or her capacity and scope of duties on behalf of the **Insured Entity**, **Named Insured**, **Predecessor Firm** or **Non-Profit Entity**.

(Policy at HANOVER000008.)

The court considers each of the transactions at issue below.

     *a.*    *Takenaka/Rounds's Green Sky Investment*

Hanover relies on three documents that it contends establish Mr. Huynh's ownership and control over Green Sky.  Two of the documents were attached to Takenaka/Rounds's complaint in the Takenaka Action:  Green Sky's July 10, 2017 Limited Liability Company Operating Agreement and a Transfer of Membership Interests document.  (Takenaka Compl. Exs. 4 ("LLC Operating Agreement"), 5.)  The LLC Operating Agreement names Mr. Huynh as the sole member of Green Sky and states that

//

//

he owned 100% of the 1,500 membership units in the company. (*Id.* Ex. 4 at 63.[5]) It also names Mr. Huynh as the "Manager of the Company." (*Id.* at 66.) Similarly, the Transfer of Membership Interests document identifies Mr. Huynh as the Manager of Green Sky, states that Mr. Huynh "has the authority to transfer membership units pursuant to the [LLC Operating Agreement]," and provides that Takenaka/Rounds would receive 100 of the 1,500 total membership units. (*Id.* Ex. 5.) The third document is a July 10, 2017 Initial Report filed with the Washington Secretary of State for Green Sky. (Hesselgesser Decl. ¶ 14, Ex. M.) This document names Mr. Huynh as one of two governors of Green Sky. (*Id.* at 2.)

None of the Defendants dispute that Mr. Huynh was the manager and the sole or majority owner of Green Sky at all times relevant to the Takenaka Action. (*See* Takenaka/Rounds Resp.; Woodard Resp.; Pham Resp; *see also* Huynh/Intrepid MSJ Resp. (Dkt. # 44) (making no reference to Green Sky).) The court concludes, therefore, that there is no genuine issue of material fact that Mr. Huynh held an interest of greater than 15% as a member of Green Sky and that he "directly or indirectly operated, controlled or managed" Green Sky. (*See* Policy at HANOVER000011-13.) Thus, Takenaka/Rounds's claims arising from the Green Sky transaction are, as a matter of law, excluded from coverage under the Policy.

Although they do not dispute Mr. Huynh's ownership or management of Green Sky, Takenaka/Rounds contend that the court should deny summary judgment because

---

[5] Because the LLC Operating Agreement does not include page numbers, the court cites to the ECF page number.

Mr. Huynh owed them duties to disclose potential conflicts of interest or to seek the advice of independent counsel before they agreed to invest in Green Sky.[6] (*See* Takenaka/Rounds Resp. at 4; *see also* Takenaka/Rounds MSJ Resp. (Dkt. # 45) at 24-25.) Takenaka/Rounds's claims that Mr. Huynh breached duties to them by failing to disclose conflicts or advise them to seek counsel, however, necessarily arise from and are related to the Green Sky transaction. Because the Outside Entities exclusion excludes coverage for loss for any claim that is "based on, arising out of or in any way related to" any entity in which an insured holds an interest of 15% as a member or which is directly or indirectly managed by an insured (*see* Policy at HANOVER000011-13), and because there is no dispute as to Mr. Huynh's ownership or management of Green Sky, the court GRANTS Hanover's motion for partial summary judgment that it has no duty to defend or indemnify Intrepid and Mr. Huynh in the Takenaka Action for claims relating to the Green Sky transaction.

        *b.*      *Takenaka/Rounds's and Mr. Woodard's $50,000 Loans to Letitia*

The Takenaka and Woodard Actions both include claims against Intrepid and Mr. Huynh relating to transactions involving Letitia. (*See supra* Section II.A.) Hanover relies on Secretary of State filings and a declaration filed by Mr. Pham to establish that Intrepid and Mr. Huynh had ownership in and control over Letitia. (*See* MFR at 3, 5.) First, the January 19, 2016 Initial Report for Letitia names Intrepid as the sole manager of

---

[6] Neither Mr. Woodard nor Mr. Pham discuss Green Sky in their filings, and Mr. Huynh did not respond to Hanover's motion for reconsideration. (*See* Woodard Resp.; Pham Resp.; *see generally* Dkt.)

Letitia. (Hesselgesser Decl. ¶ 13, Ex. L at 3.[7]) Second, two subsequent filings—an August 18, 2017 Reinstatement Application and Annual Report and a February 16, 2018 Express Annual Report with Changes—list Mr. Huynh as the sole governor of Letitia. (*Id.* at 12-13, 9-10.) Third, Mr. Pham stated in his declaration in opposition to Hanover's motion for summary judgment that he "had no idea that [Letitia] existed" until December 2018 (more than a year after Takenaka/Rounds and Mr. Woodard invested in Letitia); that he had not been a part of Letitia's formation, operation, or business before December 2018; and that he only learned of Letitia when his bank informed him that he had "purportedly transferred" the Property to Letitia. (Pham Decl. ¶ 12.) Mr. Pham became sole governor of Letitia effective April 27, 2019. (*See* Hesselgesser Decl. Ex. L at 6-7.)

No party presents any evidence that places in question Intrepid's and Mr. Huynh's status as governors of Letitia when Takenaka/Rounds and Mr. Woodard made their investments in Letitia. (*See generally* Takenaka/Rounds Resp.; Pham Resp.; Woodard Resp.; *see also* Huynh/Intrepid MSJ Resp. at 4-6 (arguing only that coverage exists because the claims involve "professional services").) The court concludes, therefore, that there is no genuine issue of material fact that Intrepid and Mr. Huynh "directly or indirectly operated, controlled[,] or managed" Letitia (*see* Policy at HANOVER000011-13), and that as a result, Takenaka/Rounds's and Mr. Woodard's claims arising from their loans to Letitia are excluded from coverage under the Policy as a matter of law.

---

[7] Because Exhibit L contains multiple documents, the court cites to the ECF page number.

Takenaka/Rounds make two arguments opposing a determination on summary judgment that Mr. Huynh directly or indirectly operated, controlled, or managed Letitia. First, they argue that Mr. Huynh's control and management of Letitia are in dispute because Hanover "presented nothing indicating that [Mr.] Pham, the property owner, had executed (at the time of [Takenaka/Rounds's] hard money loan) an operating agreement, a resolution, or other type of document acknowledging any type of ownership interest or management rights on the part of Mr. Huynh" to the Property. (Takenaka/Rounds Resp. at 2.) This argument, however, goes only to whether Mr. Huynh legitimately owned or managed the Property—it does not address Mr. Huynh's control or management of Letitia, the entity to which Takenaka/Rounds made their loan and which is named in the promissory note and deed of trust. (*See* Takenaka Compl. Exs. 2-3.)

Second, Takenaka/Rounds contend that Intrepid and Mr. Huynh owed them duties before they made their loan to Letitia, and that, as a result, the Policy covers claims based on breach of those duties. (*See* Takenaka/Rounds Resp. at 3-4; *see also* Takenaka/Rounds MSJ Resp. at 20-21.) But as Takenaka/Rounds acknowledge, these claims necessarily relate to their loan to Letitia. (*See id.* (stating that if Mr. Huynh had advised them to seek independent counsel, that counsel "would have requested 'proof' of the requisite 'ownership' and authorization for the loan.").) Neither of Takenaka/Rounds's arguments establish a genuine issue of material fact as to Intrepid's or Mr. Huynh's management of Letitia or, as a result, the Policy's coverage of their claims against Intrepid and Mr. Huynh.

1    Mr. Woodard contends that the Secretary of State filings, viewed in the light most

2    favorable to him, shows that Mr. Huynh's designation of himself and Intrepid as

3    governors of Letitia was "nothing more than a mistake" that Mr. Huynh made as Mr.

4    Pham's lawyer.[8]  (Woodard Resp. at 3.)  Mr. Woodard, however, points to no evidence

5    that Mr. Huynh's actions were mistaken.  He relies chiefly on Mr. Pham's statements that

6    he told Mr. Huynh to "fix" the "problem" of the transfer of the Property to Letitia.  (*See*

7    *id.* (citing Pham Decl. ¶¶ 13-1).)  At no point, however, do Mr. Woodard or

8    Takenaka/Rounds allege in their complaints that Mr. Huynh's actions were mistaken, nor

9    does Mr. Pham so contend in his declaration.  Furthermore, the public filings relating to

10   Letitia make clear that Mr. Huynh and/or Intrepid were governors of Letitia from

11   mid-2016 until early 2019.  Although the court must construe the complaints in the

12   underlying actions liberally and strictly construe exclusionary clauses against the insurer,

13   *see Am. Best Food, Inc.*, 229 P.3d at 696, Mr. Woodard nevertheless bears the burden on

14   summary judgment to present evidence creating a genuine issue of material fact as to the

15   applicability of the exclusion.  He has not met that burden here.

16       Mr. Woodard further contends that none of the documents on file with the

17   Secretary of State make clear Mr. Huynh's "precise management role" with respect to

18   Letitia.  (Woodard Resp. at 3-4 (citing Woodard MSJ Resp. (Dkt. # 48) at 7-9.)  But,

19

20   _____

         [8] Mr. Woodard also contends that there are issues of fact as to Intrepid's and Mr. Huynh's
21   management of or control over Letitia because the Property had not yet been transferred to
     Letitia when he agreed to make the loan to Letitia.  (Woodard Resp. at 2-3.)  But whether the
     Outside Entities exclusion applies does not depend on whether Intrepid and Mr. Huynh managed
22   the Property—rather, it depends on whether they managed Letitia.

1  again, the exclusion does not require a showing of the insured's "precise management

2  role." Rather, it requires only proof that the insured "directly or indirectly" managed or

3  controlled the entity. (*See* Policy at HANOVER000011-13.) Hanover has provided that

4  proof, and Mr. Woodard has presented no evidence that puts that proof in question.

5      For their part, Mr. Pham and Letitia point out that the promissory notes issued in

6  relation to Takenaka/Rounds's and Mr. Woodard's loans to Letitia were purportedly

7  executed by Mr. Pham "for 4200 Letitia, LLC." (Pham Resp. at 4-5.[9]) Although they

8  dispute that Mr. Pham signed the promissory notes, they contend that the fact that Mr.

9  Pham's name appeared on the signature line, rather than Mr. Huynh's, shows that Mr.

10 Huynh did not have exclusive control over Letitia. (*Id.*; *see also* Pham Decl. ¶ 14, Exs.

11 10, 12.) But the Outside Entities exclusion does not require that the insured have

12 exclusive control over the entity—rather, the exclusion applies if the insured "directly or

13 indirectly operated, controlled[,] or managed" the entity. (*See* Policy at

14 HANOVER000011-13.) Thus, as long as Intrepid or Mr. Huynh directly or indirectly

15 controlled the entity, claims relating to that entity are excluded. (*Id.*) Because no

16 Defendant has directed the court to evidence contradicting the Secretary of State filings

17

---

18   [9] Mr. Pham and Letitia's opposition to Hanover's motion for summary judgment focused
    on coverage of their claims against Intrepid and Mr. Huynh and did not substantively address the
19   applicability of the Outside Entities exclusion to Takenaka/Rounds's and Mr. Woodard's claims.
    (*See* Letitia MSJ Resp. (Dkt. # 49) at 15-24.) Hanover, however, did not move for summary
20   judgment with respect to Mr. Pham's and Letitia's claims against Mr. Huynh and Intrepid. (*See
    generally* MSJ.) Mr. Pham and Letitia asserted only, without further argument, that the "outside
21   entity defense will not shield" Intrepid or Mr. Huynh because Letitia "was created, wholly
    owned, managed, and utilized by Huynh and Intrepid" to procure the Property "by wrongful
22   means" and to use the Property "as collateral for fraudulent, hard money loans." (*See* Letitia
    MSJ Resp. at 3.)

establishing Intrepid and Mr. Huynh as governors of Letitia during the applicable

timeframe, the court concludes that Hanover has shown, as a matter of law, that the

Policy's Outside Entities exclusion applies to Takenaka/Rounds's and Mr. Woodard's

claims arising from their $50,000 loans to Letitia, and GRANTS Hanover's motion for

partial summary judgment that it has no duty to defend or indemnify Intrepid and Mr.

Huynh for claims arising from the loans to Letitia.

### c.      Mr. Woodard's $150,000 Loan to Kylin NW

Kylin NW is listed as "maker" on the August 4, 2017 promissory note issued to

Mr. Woodard in exchange for a $150,000 loan.  (*See* Woodard Compl. ¶ 12(c), Ex. 1.)

Hanover asserts that an August 20, 2018 Foreign Registration Statement executed by Mr.

Huynh and filed with the Secretary of State provides proof of Mr. Huynh's ownership

and control over Kylin NW.  (Hesselgesser Decl. ¶ 15, Ex. N.)  This document lists Mr.

Huynh and Ken Malborg as "governing persons" and as members of Kylin NW.  (*Id.*)

Only Mr. Woodard disputes Mr. Huynh's ownership or management of Kylin

NW.  He contends that the Foreign Registration Statement does not state the respective

percentage of ownership or management duties of Mr. Huynh and Mr. Malborg and that

there is no evidence tying Mr. Huynh's ownership or management of Kylin NW to Mr.

Woodard's loan.  (Woodard Resp. at 2 (citing Woodard MSJ Resp.).)  He points out that

the Foreign Registration Statement does not establish as a matter of law that at the time of

Mr. Woodard's loan transaction, Mr. Huynh had "any actual operational, management, or

ownership control or authority" over Kylin NW.  (Woodard MSJ Resp. at 8.)  The court

agrees.  The Foreign Registration Certificate establishes only that Mr. Huynh was a

governor, member, and owner of Kylin NW as of August 20, 2018—more than a year after the issuance of the August 4, 2017 promissory note. (*Compare* Woodard Compl. Ex. 1, *with* Hesselgesser Decl. Ex. N.) The August 4, 2017 promissory note, meanwhile, lists Mr. Pham as guarantor for Kylin NW and makes no mention of Intrepid or Mr. Huynh. (*See* Hesselgesser Decl. Ex. N.) The court concludes that there is a genuine issue of material fact regarding whether Mr. Huynh owned more than 15% of Kylin NW or "directly or indirectly operated, controlled[,] or managed" the entity in the operative timeframe. (*See* Policy at HANOVER000011-13.) Accordingly, the court DENIES Hanover's motion for partial summary judgment that it has no duty to defend or indemnify Intrepid and Mr. Huynh with respect to Mr. Woodard's $150,000 loan to Kylin NW.

**B.    Motions to Stay**

As the court explained in its March 18, 2021 order, under the *Brillhart* abstention doctrine, district courts have broad discretion to stay or dismiss actions seeking declaratory judgment. *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-83 (1995); *Brillhart*, 316 U.S. at 494-95; *Dizol*, 133 F.3d at 1223); *see also* 28 U.S.C. § 2201 (federal courts "*may* declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)). District courts consider three primary factors when evaluating whether to abstain from hearing a case under the *Brillhart* doctrine: "[1] avoiding 'needless determination of state law issues'; [2] discouraging 'forum shopping'; and [3] avoiding 'duplicative litigation.'" *R.R. St. & Co.*, 656 F.3d at 975 (quoting *Dizol*,

133 F.3d at 1224).  Even if the district court has subject matter jurisdiction over a declaratory judgment action, it is not required to exercise its authority to hear the case.  *See Dizol*, 133 F.3d at 1223.  The court reconsiders each of the *Brillhart* factors in light of its conclusions regarding Intrepid's and Mr. Huynh's ownership and management of the subject entities.

First, courts decline jurisdiction under the Declaratory Judgment Act in order to avoid needlessly determining state law issues.  *R.R. St. & Co.,* 656 F.3d at 975.  Thus, "[i]f there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court."  *Dizol*, 133 F.3d at 1225 (citing *Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361, 1366-67 (9th Cir. 1991)).  In its March 18, 2021 order, the court determined that issues of fact regarding Intrepid's and Mr. Huynh's roles with respect to ownership or management of Letitia and Green Sky were best left for determination in the state court proceedings.  (*See* 3/18/21 Order at 10-13.)  On reconsideration, the court concludes that Hanover has established that there is no issue of fact regarding Intrepid's and Mr. Huynh's ownership and management of Letitia and Green Sky, but that issues of fact remain with respect to their ownership and management of Kylin NW.  (*See supra* Section III.A.2.)  Thus, although the court now determines that the first *Brillhart* factor does not favor abstention in the Takenaka Action, the principle that federal courts should avoid needlessly determining state-law issues continues to favor abstention in the Woodard Action.

Second, courts decline jurisdiction over actions for declaratory relief to discourage forum shopping. *R.R. St. & Co.*, 656 F.3d at 975. The court's conclusion that this factor is neutral in the *Brillhart* analysis because Hanover did not engage in forum shopping is unchanged on reconsideration. (*See* 3/18/21 Order at 13-14.)

Third, courts decline jurisdiction over actions for declaratory relief in order to avoid duplicative litigation. *R.R. St. & Co.*, 656 F.3d at 975. In its March 18, 2021 order, the court determined that issues regarding Hanover's duty to defend and indemnify were not duplicative of the underlying state-court actions, but issues of fact regarding Intrepid's and Mr. Huynh's ownership and involvement in the subject entities were best left to the state courts to decide. (3/18/21 Order at 14.) Again, because Hanover has established Intrepid's and Mr. Huynh's roles with respect to Green Sky and Letitia, the court determines on reconsideration that this factor does not favor abstention in the Takenaka Action, but does favor abstention in the Woodard action because issues of fact remain with respect to Intrepid's and Mr. Huynh's ownership and management of Kylin NW.

In sum, because there are no issues of fact regarding Intrepid's and Mr. Huynh's ownership and management of Letitia and Green Sky, the court finds that the *Brillhart* factors do not favor abstention in the Takenaka Action. Because, however, issues of fact remain with respect to Kylin NW, the court finds that the *Brillhart* factors continue to favor abstention in the Woodard Action. Accordingly, on reconsideration, the court DENIES the motion to stay filed by Takenaka/Rounds and GRANTS the motion to stay filed by Mr. Woodard.

# IV. CONCLUSION

For the foregoing reasons, the court orders as follows:

1. The court GRANTS Hanover's motion for reconsideration (Dkt. # 54) of its March 18, 2021 order (Dkt. # 53) with respect to the Takenaka Action:

    a. The court DENIES Takenaka/Rounds's Motion to Stay as moot (Dkt. # 36); and

    b. The court GRANTS Hanover's motion for partial summary judgment (Dkt. # 32) that it has no duty to defend or indemnify Intrepid and Mr. Huynh in the Takenaka Action.

2. The court GRANTS IN PART Hanover's motion for reconsideration with respect to the Woodard Action:

    a. The court GRANTS Hanover's motion for partial summary judgment that it has no duty to defend or indemnify Intrepid and Mr. Huynh with respect to Mr. Woodard's claims arising from his loan to Letitia;

    b. The court DENIES without prejudice Hanover's motion for partial summary judgment that it has no duty to defend or indemnify Intrepid and Mr. Huynh with respect to Mr. Woodard's claims arising from his loan to Kylin NW;

    c. The court GRANTS Mr. Woodard's motion to stay (Dkt. # 41) and STAYS this case in part with respect to Hanover's claims against Mr. Woodard, pending the resolution of Mr. Woodard's action in state court; and

//

//

d.      The parties are ORDERED to file a joint status report within 10 days

of the resolution of the Woodard Action.


        Dated this 18th day of May, 2021.


                                        _____
                                        JAMES L. ROBART
                                        United States District Judge